A08A0059. HERNANDEZ v. THE STATE.
(662 SE2d 325)

MIKELL, Judge.

Following his trial before a Hall County jury, Manuel Javier Hernandez was convicted of trafficking methamphetamine, misdemeanor obstruction of an officer, and reckless driving. Hernandez claims on appeal that the trial court erred in admitting translations

---

of his in-custody Spanish-language statements in violation of the rule against hearsay and his right to confront the witnesses against him. He also contends that the trial court abused its discretion in failing to grant a mistrial or to give corrective instructions following the State's closing argument, and in failing to grant his motion to reveal the identity of the confidential informant. For the reasons set forth below, we affirm with direction.

Viewed in a light most favorable to the verdict, the evidence shows that on April 4, 2005, at approximately 11:00 a.m., an undercover officer assigned to the Multi-Agency Narcotics Squad ("MANS") met Hernandez, Flavio Garcia, and a confidential informant in the parking lot of a Hall County shopping center for the purpose of buying methamphetamine. The officer, Hernandez, and Garcia discussed the purchase by the officer of five pounds of methamphetamine for $65,000. Hernandez told the officer that he could do five pounds, but he wanted to see the money. The officer showed Hernandez and Garcia what appeared to be $65,000.

Hernandez told the officer that it would be a couple of hours before they could obtain the methamphetamine. Later that afternoon, Hernandez and Garcia returned to the parking lot to meet with the officer. Hernandez was driving a white Lincoln Navigator, and Garcia was a passenger. The Lincoln was followed by a Toyota 4Runner with a driver and two passengers. The undercover officer discussed counting the money with Hernandez. The officer suggested that the money be counted in a motel room, but that he wanted to see the methamphetamine first. One of the Toyota's passengers agreed to show the drugs to the officer. There were five plastic containers containing methamphetamine on the Toyota's floorboard. After the men returned to their vehicles, the officer gave the signal to the nearby "takedown team" to initiate the arrest. Hernandez attempted to leave when the police arrived. As he was trying to flee the scene, Hernandez's Lincoln struck an officer's vehicle.

1. Hernandez contends that the trial court erred in failing to grant a mistrial or to give corrective instructions after the State's injection of extrinsic, prejudicial, and inflammatory matters in closing argument. We disagree.

Hernandez filed a motion in limine asking the trial court to forbid the State from using the term "illegal immigrant" or to make any mention of Hernandez's alleged immigration status or national origin. The trial court granted Hernandez's motion in limine to the extent that the State was barred from using the term "illegal immigrant" unless and until Hernandez put his character into issue.

During closing argument, the prosecutor argued that the defense attorney:

asked [the officer] when he said most of the cases I deal with are these illegal Hispanic type cases. He says, why is that, do you just specialize in busting Hispanics? No. Because that's who is doing the big cases. You read the papers, you know that.

Hernandez did not make a contemporaneous objection to this argument. After closing argument had been concluded and the jury had retired, defense counsel moved for a mistrial. Hernandez argued to the trial court that the prosecutor's closing argument "gets into some of the things that we have a motion in limine about, illegal immigrants." Defense counsel asked the court to grant a mistrial or in lieu thereof to instruct the jury "to the effect that those things are not for your consideration" and then "think[ing] . . . off the top of my head" referred the court to "17-8-75 or 76 about argument of the parties." Hernandez also asked for a curative instruction that "those things are not for your consideration."

The trial court noted that, following an earlier objection by defense counsel during closing argument, he had instructed the jury that "closing argument is not evidence," and declined to give another instruction. The trial court then heard argument from the State and denied the motion for a mistrial, "in consideration of the totality of the evidence during the trial, evidence elicited by defense counsel of the defendant during his testimony and argument to the jury in closing."

Hernandez complains that the prosecutor essentially argued that "illegal Hispanic type" persons are the ones "who [are] doing the big [drug] cases," and that this argument was outside of the wide latitude permitted in closing argument because it injected extrinsic and prejudicial matters which had no basis in evidence.[1] He also contends that the State's closing argument denied his right to a fair trial and due process of law, improperly impugned his character, and was in violation of OCGA § 17-8-75, which provides in part that, if counsel makes "statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same." Hernandez made no contemporaneous objection during closing argument on these grounds, and the issues are therefore waived for purposes of appeal.[2]

To the extent that Hernandez complains that the trial court

---

[1] See *Bell v. State*, 263 Ga. 776 (439 SE2d 480) (1994).

[2] See *Butler v. State*, 273 Ga. 380, 383-384 (8) (541 SE2d 653) (2001) (waiting until the end of closing argument to move for a mistrial was untimely). See also *Carson v. State*, 259 Ga. App. 21, 23 (3) (576 SE2d 12) (2002) (appellant failed to object at time allegedly improper closing argument was made, and so issue was waived on appeal); *Jackson v. State*, 271 Ga. App. 317, 320 (3) (609 SE2d 643) (2005) (to preserve review of violation of OCGA § 17-8-75, it is

erred in denying his motion for a mistrial in light of the State's alleged violation of the motion in limine, we find no error.[3]

> The trial court has a broad discretion in passing on motions for mistrial, and its ruling will not be disturbed by the appellate courts unless it appears that there has been a manifest abuse of discretion and that a mistrial is essential to the preservation of the right to a fair trial.[4]

As granted, the motion in limine was limited in scope, prohibiting the State from using the term "illegal immigrant." The prosecutor's reference to "illegal Hispanic" is essentially the same as the use of the term "illegal immigrant," and so in violation of the motion in limine. The prosecutor did not, however, refer to Hernandez as an illegal immigrant or illegal Hispanic. The prosecutor's language may have implied that Hernandez was an illegal immigrant, but defense counsel had also strongly implied that Hernandez was an illegal immigrant in his previous closing argument. Thus, the trial court could reasonably conclude that the State's use of the term "illegal Hispanic" did not prejudice Hernandez.[5] The prosecution's argument was improper to the extent that he inferred that Hispanics were responsible for "the big cases," but this argument was not prohibited by the grant of the motion in limine and not objected to by defense counsel. Under the circumstances, we cannot conclude that the trial court abused its discretion in denying Hernandez's motion for a mistrial on the grounds on which that motion was made.

---

necessary to object at the time allegedly prejudicial comment is made); *Turner v. State*, 208 Ga. App. 728, 729 (431 SE2d 727) (1993) (motion for mistrial must be made contemporaneously with alleged misconduct). "[A] motion in limine preserves an issue for appeal without a contemporaneous objection at trial, [but] this rule cannot be invoked to preserve a different, if perhaps related, error." (Citations and punctuation omitted.) *Arnold v. State*, 249 Ga. App. 156, 161 (3), n. 15 (545 SE2d 312) (2001).

[3] As to the alleged violation of the motion in limine, Hernandez was not required to object at the time the potential violation occurred. See, e.g., *Reno v. Reno*, 249 Ga. 855, 856 (1) (295 SE2d 94) (1982) (if motion in limine is granted, successful movant need not renew objection if evidence is introduced at trial; otherwise, it would require he draw the jury's attention to the prejudicial material, and objecting party could wait until jury recessed to make a timely motion for mistrial). See also *Tollette v. State*, 280 Ga. 100, 103 (8) (621 SE2d 742) (2005) (an adverse ruling by a trial court to a motion in limine seeking to limit a specific argument at trial serves to preserve the issue of the argument's propriety for appellate review).

[4] (Citations and punctuation omitted.) *Wilcox v. State*, 229 Ga. App. 192, 193 (2) (493 SE2d 600) (1997).

[5] See *Gaines v. State*, 179 Ga. App. 623, 625 (2) (347 SE2d 673) (1986) (no mistrial required where witness twice used word "rape" in rape trial after trial court had granted a motion in limine to refrain from use of the word).

2. Hernandez contends that the trial court erred in admitting inaccurate translations of a nontestifying witness in violation of the hearsay rule and the Sixth Amendment right to confrontation. We disagree.

Following its authentication by a law enforcement officer, the trial court allowed the State to introduce into evidence and play an audiotape of Hernandez's in-custody interview with a MANS officer. The interview was conducted by the officer with the help of Sonia Loredo, who translated between the English-speaking officer and the Spanish-speaking Hernandez. Loredo did not testify at trial. Before the tape was played to the jury, defense counsel was granted a continuing objection to "anything that . . . Loredo says [on] the basis of the confrontation clause and hearsay." After the tape was played to the jury, the trial court allowed the defense to call Hernandez's court-appointed interpreter as a witness, and she then provided her own English interpretation of Hernandez's Spanish-language statements. According to the court-appointed interpreter, a substantial amount of the Spanish-language portion of the tape was inaudible and she could not provide an interpretation of those statements.[6]

(a) Under the "language conduit" rule,

> absent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay.[7]

Hernandez does not contend that Loredo had a motive to mislead or distort his statements, but he argues that the trial court nevertheless lacked the appropriate assurances that the translation was reliable.[8] In particular, he points out that Loredo was not trained or certified as a translator, and that she only was a clerk and secretary. Notwithstanding her job title, the evidence showed that Loredo spoke both Spanish and English and helped MANS officers with interviews in the course of her work. She was at the scene of the

---

[6] The court-appointed translator indicated that Loredo had provided an inexact translation as to one of Hernandez's statements, and then testified that another translation was inaccurate, specifically "when she said that he came up here to meet with Wayne." The State objected to the procedure where a portion of the tape was played and defense counsel asked the witness about the translation. The trial court sustained the objection, and defense counsel agreed that the witness would just translate Hernandez's statements.

[7] (Citations and punctuation omitted.) *Lopez v. State*, 281 Ga. App. 623, 625 (1) (636 SE2d 770) (2006).

[8] See id.

arrest, and Hernandez testified that he realized she spoke Spanish. Hernandez, who also spoke some English, testified that he was unable to tell during the interview whether she translated correctly or incorrectly. Before the tape on the interview was played to the jury, defense counsel argued that "a lot" of Loredo's translation was incorrect, but did not specify in what way the translation was incorrect.

In light of the foregoing, the trial court was entitled to conclude that Loredo's out-of-court statements could be regarded as Hernandez's statements and were therefore not inadmissible hearsay. Evidence showed that Loredo had the capacity to translate the interview, and Hernandez fails to demonstrate she had any motive to intentionally mislead or distort the substance of Hernandez's statements,[9] especially in the context of a recorded interview. Although defense counsel argued to the trial court that the translation was inaccurate, we cannot conclude that the trial court erred in allowing the jury to hear the tape in the face of this bare claim, especially where the trial court indicated to counsel that if he allowed the tape to be played that the defense would be permitted to call its own translator. We conclude that, in light of the language conduit rule, the trial court did not abuse its discretion in allowing the jury to hear Loredo's out-of-court translation of Hernandez's statements over his hearsay objection.

Furthermore, even if the trial court had erred in allowing Loredo's translation to be played to the jury, Hernandez fails to show he was harmed. According to Hernandez, the crucial issue of the case was whether he had prior knowledge of the methamphetamine transaction, and Loredo's translation was harmful because it indicated that he knew about the drugs. However, Hernandez fails to show that Loredo's translation was substantively inaccurate as to any statement touching on his knowledge of the methamphetamine.[10]

(b) The admission of Loredo's out-of-court translation into evidence did not violate Hernandez's Sixth Amendment right to confrontation. As a rule, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes:

---

[9] See *Cuyuch v. State*, 286 Ga. App. 629, 632 (1) (a) (649 SE2d 856) (2007) (statement of witness who did not testify at trial, to the extent he interpreted defendant's statements to police for the investigating officer, did not create an additional layer of hearsay).

[10] For instance, according to the testimony of the court-appointed translator, Hernandez told the officer in the course of the interview that "I was aware of that shit that was in there, I realized it because the guy that was with me, that's where they were calling and everything." This appears consistent with Hernandez having known about the methamphetamine.

confrontation."[11] Although a police interrogation is a testimonial setting,[12] the testimony was being given by Hernandez while Loredo's function was to translate the testimony. "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact."[13] Under the language conduit rule, however, the statements of the translator are considered to be the statements of the declarant,[14] and Hernandez would not have the right to, in essence, confront himself.[15] Hernandez had a right to inquire into Loredo's honesty and competency in rendering the translation, but he shows no authority for the proposition that the Sixth Amendment requires that these issues may only be tested through cross-examination of the translator.[16] Accordingly, we find no error.

3. Hernandez filed a pre-trial motion to reveal the identity of the confidential informant involved in the methamphetamine transaction. Following a hearing, the trial court denied the motion without conducting an in-camera hearing to consider the informant's testimony. Hernandez renewed the motion several times during the trial, including after he testified in his own defense. Hernandez contends that the trial court abused its discretion in failing to grant his request that the informant be revealed to the trial court for an in-camera hearing to determine if the informant's testimony was material to the defense. We agree.

*Brady v. Maryland*[17] and *Roviaro v. United States*[18] "must be read together where . . . the question is disclosure of the identity of the state's informer-witness or informer-participant if material to the defense on the issue of guilt or punishment."[19] In other words, "the due process concept of fundamental fairness requires that the public interest in protecting the flow of information to law enforcement officials be balanced against the right of the accused to a full and fair opportunity to defend himself."[20]

---

[11] *Crawford v. Washington*, 541 U. S. 36, 68-69 (V) (C) (124 SC 1354, 158 LE2d 177) (2004).

[12] Id. at 68 (V) (C).

[13] (Citation and punctuation omitted.) Id. at 51 (III) (A).

[14] *Lopez*, supra.

[15] See *United States v. Nazemian*, 948 F2d 522, 525-526 (A) (9th Cir. 1991).

[16] See *People v. Morel*, 798 NYS2d 315, 319 (Sup. Ct. N.Y. 2005) ("what defendant sought to test in 'the crucible of cross-examination' was the translator's willingness and capacity to render statements accurately from one language to another which . . . is a purely state law 'reliability' issue").

[17] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[18] 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957).

[19] *Thornton v. State*, 238 Ga. 160, 165 (2) (231 SE2d 729) (1977).

[20] (Citation and punctuation omitted.) *Bannister v. State*, 202 Ga. App. 762, 763 (1) (a) (415 SE2d 912) (1992). "The appellate court, in determining the propriety of disclosing the

For purposes of determining whether the State must reveal the identity of the confidential informant, the trial court must conduct a two-step hearing:

> Initially, the trial court should hear evidence to determine: (a) that the confidential informant is an alleged informer-witness or informer-participant whose testimony appears to be material to the defense on the issue of guilt or punishment; (b) that the testimony for the prosecution and the defense is or will be in conflict; and (c) that the confidential informant was the only available witness who could amplify or contradict the testimony of these witnesses.[21]

If the threshold is met, the trial court must conduct an in-camera hearing of the confidential informant's testimony.[22] The trial court should then "weigh the materiality of the informer's identity to the defense against the State's privilege not to disclose his name under *Roviaro*."[23]

According to Hernandez's trial testimony, Hernandez agreed to drive Garcia to Gainesville to retrieve some of Garcia's things from Garcia's girlfriend. After they stopped at a Burger King, Garcia reported receiving a telephone call from his "cousin," and shortly thereafter Hernandez parked in front of "some stores" where Garcia greeted an Hispanic man. Garcia and the man hugged as if they had known each other for a long time. Also present was a third person whom Hernandez recognized at trial as the undercover officer who had previously testified. Garcia, Garcia's "cousin," and the officer spoke "far away" from Hernandez. Hernandez's conversation with the undercover officer was limited to a short discussion about Hernandez's hamburger, and he offered the officer a beer. Garcia

---

identity of an informant, may consider all relevant evidence contained in pretrial, trial and post-trial proceedings." (Citations omitted.) *Walton v. State*, 194 Ga. App. 490, 491 (1) (390 SE2d 896) (1990).

[21] (Citation and punctuation omitted.) *Respress v. State*, 267 Ga. App. 654, 655-656 (2) (600 SE2d 727) (2004).

[22] See *Moore v. State*, 187 Ga. App. 387, 393 (2) (370 SE2d 511) (1988) (although the threshold for disclosure may be met, "it may be determined during the course of a reported in-camera inquiry that the informer will testify substantially the same as the police[, and i]n such circumstances, the informer's identity normally would not be required to be disclosed to the defense. Conversely if, during the in-camera proceedings, the informant proves to be a material witness for the defense within the meaning of *Roviaro* and *Thornton*, fundamental fairness and fair trial concerns dictate that his identity must be disclosed"). *Moore*, supra, provides that "in certain instances" in-camera proceedings may be suggested by the State or elected by the trial court sua sponte, but the procedure is described as mandatory under later authority such as *Respress*, supra, *Little v. State*, 230 Ga. App. 803, 808 (3), n. 3 (498 SE2d 284) (1998), and *Grant v. State*, 230 Ga. App. 330, 331 (1) (496 SE2d 325) (1998).

[23] (Citation, punctuation and footnote omitted.) *Little*, supra at 810 (3).

directed Hernandez back to the parking lot later that day, and when they stopped, the Toyota appeared. Hernandez maintained that he knew nothing about the methamphetamine before the police arrived.

Hernandez's testimony is contradicted by that of the undercover officer who was present at the meeting with the informant, Garcia, and Hernandez. The undercover officer testified that during the meeting the informant introduced him to Hernandez and Garcia. According to the officer, he discussed the purchase of five pounds of methamphetamine with Hernandez and Garcia; Hernandez said that "he could do the five pounds"; and he showed the money to both Hernandez and Garcia. After seeing the money, Garcia walked away and made a cell phone call before returning to the officer and telling him that the five pounds would not be a problem, but that they would have to go to Atlanta to pick it up.

Under these circumstances, Hernandez met the threshold for requiring the State to disclose the informant's identity. The testimony for the prosecution and defense was conflicting. The confidential informant's testimony appeared to be material to the defense, especially considering that the methamphetamine was not delivered in Hernandez's vehicle. For instance, the informant could confirm whether he called Garcia to set up the methamphetamine transaction, as Hernandez's testimony infers, and he could confirm whether Hernandez was or was not involved in negotiating the drug deal with the undercover officer. There were other MANS officers who observed the meeting from a distance, but Hernandez's "opportunity to cross-examine [the officers] was hardly a substitute for an opportunity to examine"[24] the informant who was present at the scene. Garcia was also present, but the parties stipulated at the pre-trial hearing that if called to testify Garcia would invoke his Fifth Amendment privilege against self-incrimination. "Thus, the informer is the only witness in a position to amplify or contradict the testimony of [Hernandez] and the police officer."[25]

The State points to authority that when a person introduces an officer to the defendant, and the person witnesses the sale, the person is an informant and disclosure of the informant's name and address to the defendant is not mandated by law.[26] However, as we pointed out in *Moore*, such disclosure "rests in the discretion of the trial judge, balancing the rights of the defendant and the rights of the [S]tate under all the facts and circumstances."[27] Further, as in

---

[24] *Roviaro*, supra at 64 (II).

[25] (Citation and punctuation omitted.) *Moore*, supra at 391 (2).

[26] *Wilson v. State*, 191 Ga. App. 833 (383 SE2d 197) (1989).

[27] (Citations, punctuation and emphasis omitted.) *Moore*, supra at 391 (2).

*Moore*, "the appellant testified in his own defense and the informer's testimony reasonably can be expected to directly support or refute his testimony."[28]

In view of the foregoing, the trial court erred in failing to hold an in-camera hearing to determine if the confidential informant's testimony was material to the defense.[29] As no in-camera hearing was held, the currently existing facts of the case, viewed consistently with *Moore*, required the disclosure of the informant's identity.[30] We cannot determine the extent of prejudice to Hernandez, and the case is affirmed with direction that it be remanded to the trial court for a post-trial hearing consistent with the procedures outlined in *Moore* in order for the trial court to determine if the error was harmless.[31] If the trial court rules that a new trial is not required, then Hernandez may appeal from that judgment.[32]

*Judgment affirmed with direction. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 19, 2008 

*Brett M. Willis*, for appellant.
*Lee Darragh, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney*, for appellee.

---

[28] Id. at 392 (2).

[29] See *Little*, supra at 809 (3) ("the trial court should have required the State to disclose the identity of the confidential informant to the trial judge only and an in camera hearing should have been held to determine if, in fact, the confidential informant['s] . . . testimony would be inculpatory, impeaching or exculpatory to the defendant's guilt or punishment") (emphasis omitted).

[30] See *Moore*, supra.

[31] See *Little*, supra at 810 (3); *Jones v. State*, 192 Ga. App. 186 (384 SE2d 273) (1989); *Ponder v. State*, 191 Ga. App. 346, 347 (381 SE2d 534) (1989).

[32] See *Thornton*, supra at 166 (2); *Moore*, supra at 393 (2).