## A09A0962. MATHIS v. THE STATE.
### (681 SE2d 179)

JOHNSON, Presiding Judge.

A jury found Stuart Mathis guilty of driving under the influence with an unlawful blood-alcohol concentration, driving under the influence to the extent he was a less safe driver, speeding, and driving with an open container of alcohol. He appeals from the convictions entered on the verdict, challenging (i) the admission of breath test results when his request for an independent test was not accommodated, (ii) the denial of his motion to discover the computer software "source code" for the Intoxilyzer 5000 breath testing device, (iii) the exclusion of testimony regarding the general reliability of Intoxilyzer 5000 test results, and (iv) the denial of his motion for a mistrial based on remarks the state made in its closing argument. The arguments are without merit, so we affirm the convictions.

1. Mathis contends the trial court erred in not suppressing his breath test results when the state failed to accommodate his request for an independent blood test pursuant to Georgia's implied consent laws.[1] This enumeration presents no grounds for reversal.

In reviewing a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision.[2] We construe the evidence most favorably to uphold the trial court's findings and judgment, and we must adopt the court's findings on disputed facts and credibility unless they are clearly erroneous.[3] Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them.[4]

The evidence shows that a Douglas County sheriff's deputy noticed Mathis' car traveling at a high rate of speed and activated his laser speed detector. The device indicated that Mathis' car was traveling 63 miles per hour in a 45 mile per hour zone. The deputy initiated a stop of Mathis' vehicle.

---

[1] See OCGA §§ 40-5-55 (a) (consent to chemical test of blood, breath, or urine implied by act of driving a motor vehicle); 40-6-392 (a) (3) (right to independent test).

[2] *Hulsinger v. State*, 221 Ga. App. 274, 275 (470 SE2d 809) (1996).

[3] Id.

[4] Id.

As the deputy approached Mathis' car, he detected an odor of alcohol coming from inside the car. When Mathis got out of the car, the deputy noticed an odor of alcohol on Mathis' breath. Mathis' eyes were bloodshot and watery, he swayed while standing, his speech was slow, and his face was flushed. Mathis' passenger had an open container of beer between his feet, and there was an empty beer bottle beside the center console. The deputy administered an alco-sensor breath test, which indicated the presence of ethyl alcohol.

When the deputy began reading Mathis his implied consent rights, Mathis asked, "could I get a blood test?" The deputy continued reading the implied consent notice.[5] Mathis said nothing else about a blood test or any other test, and nothing at all about an independent test. The deputy took Mathis to the sheriff's office, where Mathis' breath was tested on the Intoxilyzer 5000. The machine showed results of 0.128 and 0.130. No other chemical tests were administered.

An accused's right to have an additional independent chemical test administered is invoked by some statement that reasonably could be construed, in light of the circumstances, to be an expression of a desire for an additional, independent test.[6]

The record does not support Mathis' assertion that he requested an additional, independent test. At the hearing on the motion to suppress, the state played a videotape of the traffic stop. The court, defense counsel, and prosecutor all remarked that the audio on the tape was poor, and that it was difficult to hear what Mathis was saying. After watching and listening to the tape repeatedly, the trial judge found that Mathis asked "could I get a blood test?" Mathis testified at the hearing that he asked for a blood test, but could not recall much else regarding the matter.

In the context in which they were given, Mathis' words regarding a blood test cannot be reasonably construed as expressing a desire for an additional, independent test. Instead, under the circumstances, it appears that Mathis' inquiry or request concerned the type of chemical test the state would administer — blood versus breath — not his desire for an additional, independent test.[7] We have previously held that a defendant's attempt to designate the state-

---

[5] The implied consent notice the deputy read to Mathis is found in the record at State's Exhibit 1. It is not clear from the record the point at which Mathis interrupted the reading of the notice to ask about a blood test.

[6] *State v. Gillaspy*, 270 Ga. App. 111, 112 (605 SE2d 835) (2004).

[7] See *Collins v. State*, 290 Ga. App. 418, 420-421 (2) (659 SE2d 818) (2008); *Brooks v. State*, 285 Ga. App. 624, 627-628 (647 SE2d 328) (2007) (defendant was not requesting an independent blood test but was asking the officer to give him a blood or urine test in place of the breath test); *Anderton v. State*, 283 Ga. App. 493, 494-495 (1) (642 SE2d 137) (2007).

administered test is not a request for an independent test.[8] There was a substantial basis for the trial court's decision, so it is affirmed.[9]

2. Mathis contends the trial court should have granted his motion to discover from the state the Intoxilyzer 5000 computer software program or "source code" so he would know what calculations and presumptions are programmed into the devices. In the same enumeration of error, Mathis also argues that the trial court erred in not allowing a retired City of Atlanta police officer to testify that the Intoxilyzer 5000 test results are generally unreliable. This enumeration is without merit.

Pretermitting whether the Intoxilyzer 5000 source code comes within the ambit of items which can be subpoenaed from the state, before discovery will be ordered the defendant must make a prima facie showing that the requested evidence is within the possession, custody, or control of the state.[10] Mathis points to no evidence in the record showing that the device's computer source code is within the possession, custody, or control of the state. Because Mathis has failed to meet his burden, the trial court did not abuse its discretion by denying his motion.[11]

Mathis also argues that the court erred in prohibiting his witness from testifying about the general unreliability of Intoxilyzer 5000 breath testing devices. While there was evidence that the retired officer had extensive experience operating the machine, there was no evidence that he was an expert in the area of the reliability of the Intoxilyzer 5000. Therefore, the court did not abuse its discretion by limiting testimony on that topic.[12]

Furthermore, the evidence was not relevant. The witness' experiences with similar machines over the years would not prove that the machine used in this case gave an inaccurate reading for Mathis.[13] Indeed, the officer who conducted the test on Mathis testified that the machine was working properly at the time of Mathis' test. Again, the trial court did not abuse its discretion in disallowing the evidence.[14]

3. Mathis argues that the trial court erred in not granting a

---

[8] See *Brooks*, supra at 627.

[9] See *Anderton*, supra; *Hulsinger*, supra.

[10] *Hills v. State*, 291 Ga. App. 873 (663 SE2d 265) (2008).

[11] Id. at 874.

[12] See generally *Muir v. State*, 256 Ga. App. 381, 382 (568 SE2d 515) (2002); *Yount v. State*, 249 Ga. App. 563, 564-565 (1) (548 SE2d 674) (2001).

[13] See *Walters v. State*, 195 Ga. App. 434, 436 (4) (b) (394 SE2d 105) (1990) (an expert's testing of the Intoxilyzer 3000 device used to test defendant five months after the charged incident was not relevant, as it would not prove that the machine gave an inaccurate reading for defendant).

[14] See id.

mistrial based on remarks the state made during closing arguments. Specifically, Mathis complains that the state vouched for one of its own witnesses and simultaneously impugned a defense expert witness by saying that the defense witness ended up being one of the state's "best witnesses," but that the defense witness was "not quite as good" as the state's witness because the latter "came in and told you the truth"; and the state made an improper argument by telling the jury "[w]e want safe roads" and that the jury should find Mathis guilty and "[s]end a message to him."

Mathis did not object to the arguments at the time they were made. Instead, he waited until the following day, after the jury had begun deliberating, to object to the arguments. By failing to make a contemporaneous objection during closing argument, the issue is waived for the purposes of appeal.[15]

We note, however, that even if the issue had been preserved, it is without merit. It is entirely proper for counsel to urge the jury to deduce from proven facts that a witness is not telling the truth.[16] Where, as here, the argument is based on evidence, conflicts in evidence, or lack of evidence and deductions, such argument is proper even if it questions the veracity of a witness.[17]

In addition, argument that a jury should convict a person to make the community safer or to send a message that criminal activities will be punished is permissible under Georgia law.[18] The trial court did not abuse its broad discretion in denying Mathis' motion for a mistrial.[19]

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

DECIDED JUNE 18, 2009 —
RECONSIDERATION DENIED JULY 9, 2009.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Brian K. Fortner, Solicitor-General, Evelyn Proctor, Assistant Solicitor-General*, for appellee.

---

[15] See *Hernandez v. State*, 291 Ga. App. 562, 564 (1) (662 SE2d 325) (2008).

[16] *Emberson v. State*, 271 Ga. App. 773, 776 (3) (611 SE2d 83) (2005).

[17] Id.

[18] *Collins v. State*, 283 Ga. App. 188, 194 (2) (c) (641 SE2d 208) (2007); *Hunter v. State*, 282 Ga. App. 355, 357 (4) (638 SE2d 804) (2006).

[19] See *Hernandez*, supra at 565 (1).