A06A1581. LOPEZ v. THE STATE.
(636 SE2d 770)

ANDREWS, Presiding Judge.

Antonio Lopez, convicted by a jury of trafficking in methamphetamine, possession of methamphetamine with the intent to distribute, conspiracy to traffic in methamphetamine, and possession of methamphetamine,[1] appeals from the trial court's denial of his motion for new trial. Lopez contends that the trial court erred by admitting hearsay evidence and that insufficient evidence supports his convictions. For the following reasons, we find no error and affirm.

On appeal, we view the evidence "in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995). Viewed in this light, the record shows that the State produced testimony from Michael Hines, an admitted drug dealer who obtained methamphetamine

---

[1] The trial court merged the lesser offenses into the trafficking conviction and sentenced Lopez to serve 30 years in prison.

from a supplier named Robert and sold two to three pounds of methamphetamine a week.

Hines testified that in October 2002, Lopez, Jessica Gonzalez, and two unidentified men drove to his home in a red Lincoln Navigator automobile. Hines spoke and understood only English, and Lopez spoke and understood only Spanish. Hines testified that he had a face-to-face conversation with Lopez through Gonzalez, who acted as an interpreter and translated Lopez's statements into English and Hines's statements into Spanish. Hines said that Lopez told him that he (Lopez) was there to take over for Robert as the new methamphetamine supplier. After Lopez told Hines that he (Hines) owed Robert $7,000, Hines told Lopez that he would transfer title to his truck to satisfy the debt. Lopez told Hines to call him if he needed anything, which Hines understood to mean that he should call Lopez when he needed more methamphetamine. Gonzalez then wrote a phone number on a piece of paper that Lopez handed to Hines.

Hines was later arrested for possession of methamphetamine with the intent to distribute and agreed to help police by making a phone call to Lopez to set up delivery of methamphetamine. Hines called the phone number on the piece of paper Lopez gave him, and a police officer listened to the call. According to the officer, a Hispanic-sounding male answered the phone, Hines asked if he was John (the name by which Hines knew Lopez), the man said he was John, Hines identified himself, and the man then gave the phone to a female. Hines identified the female by voice as Gonzalez. Hines testified that he made arrangements by phone with Gonzalez to buy a pound of methamphetamine. On the day the methamphetamine was delivered to Hines's home, Gonzalez called and told him they were on the way to his home to deliver the methamphetamine. Police were waiting for the delivery in concealed positions in and around Hines's home. Shortly thereafter, police saw a red Navigator drive past Hines's home and stop. A small blue car followed the Navigator and pulled into Hines's driveway. The person driving the blue car, later identified as Victor Luviano, got out of the car and delivered a package to Hines containing over 400 grams of methamphetamine. Luviano was arrested by police at Hines's home. Luviano testified at trial that he was hired to follow the red Navigator to deliver a package to Hines, that Lopez was a passenger in the Navigator, and that Lopez helped direct him to Hines's home. A phone number found in Luviano's pocket when he was arrested was the same number that Lopez gave to Hines and that Hines called to arrange the delivery of methamphetamine. A police officer who left his concealed position to secure the blue car in the driveway when the delivery was made, testified that the red Navigator drove away from the scene when he approached the blue car. Officers, who had been alerted by Hines that

Lopez drove a red Navigator, stopped the Navigator and discovered that Gonzalez was the driver and Lopez was a passenger.

1. Lopez contends that the trial court erred by admitting, over his hearsay objection, Hines's testimony regarding the substance of Gonzalez's English translation of statements made to him in Spanish by Lopez. If Lopez had spoken directly to Hines in English, Hines could have testified as to Lopez's statements to him under an exception to the hearsay rule that a witness can testify as to statements made directly to the witness by the defendant. *Moore v. State*, 240 Ga. 210, 212 (240 SE2d 68) (1977); *Searcy v. State*, 214 Ga. App. 620 (448 SE2d 468) (1994); *Hardeman v. State*, 180 Ga. App. 632, 633-634 (349 SE2d 839) (1986). But Hines could only testify as to what Gonzalez told him in English that Lopez said to him in Spanish. Where, as here, the translator does not testify, the issue is whether use of the translator between Lopez and Hines created two layers of hearsay that rendered Hines's testimony about the substance of the translation inadmissible. We find that the weight of recent authority supports the conclusion that, provided circumstances show the translator had no motive to distort the translation and that it was otherwise accurate, Gonzalez acted as a mere "language conduit" for Lopez. Under the so-called "language conduit" rule, "[a]bsent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay." (Citation and punctuation omitted.) *Cassidy v. State*, 149 SW3d 712, 715 (Tex. App. 2004); see *People v. Gutierrez*, 916 P2d 598 (Colo. Ct. App. 1995). Thus, with appropriate assurances that the translation was reliable, the court was authorized to treat the translated statements made by Gonzalez to Hines as though made directly to Hines by Lopez, without testimony from Gonzalez.

The evidence showed that Lopez and Gonzalez contacted Hines to initiate a conspiracy to sell methamphetamine to Hines, and while all three parties were present in conversation, Lopez intentionally relied on Gonzalez to translate his Spanish statements into English to enable him to communicate with Hines to further the conspiracy. Hines testified that the substance of the translated conversation was that Lopez told him he wanted to act as Hines's new methamphetamine supplier, and that Lopez gave him a phone number to call when he needed methamphetamine. Hines later called the number and arranged with Gonzalez to have methamphetamine delivered to his home, after which Lopez and Gonzalez directed the delivery to his home and observed as the delivery was made by a third person. Lopez

does not claim that Hines's testimony regarding the English translation inaccurately reflected what he said in Spanish, and the fact that Lopez and Gonzalez were co-conspirators pursuing the same objective lends support to the conclusion that Gonzalez was capable and willing to render an accurate translation. Moreover, evidence of the events which followed the translated communication were consistent with Hines's testimony about the substance of the translation. There was no evidence that Gonzalez had a motive to misrepresent what Lopez said and no evidence otherwise casting doubt on the accuracy of the translation. Under these circumstances, the record shows that the translation was sufficiently reliable for the court to apply the "language conduit" rule and treat the translated statements as though they were made directly to Hines by Lopez. It follows that the only hearsay issue before the court was whether Hines could testify as to statements made directly to him by Lopez. As previously stated, Hines's testimony regarding statements made directly to him by Lopez was admissible under an exception to the hearsay rule. *Moore*, 240 Ga. at 212; *Searcy*, 214 Ga. App. at 620; *Hardeman*, 180 Ga. App. at 633-634. The trial court did not abuse its discretion by admitting this evidence over Lopez's hearsay objection.[2]

2. Lopez contends the admission of hearsay statements violated the confrontation clause of the Sixth Amendment to the United States Constitution. Because this claim of error was not specifically raised by objection at trial, it presents nothing for appellate review. *Wallace v. State*, 279 Ga. 26, 27 (608 SE2d 634) (2005).

3. Lopez argues that the evidence is insufficient to support his conviction because it shows only his mere presence in the vicinity of contraband. We disagree. Luviano's testimony that Lopez helped direct him to Hines's home, combined with Lopez's previous contact with Hines, shows that Lopez was more than merely present. At a minimum, the evidence showed that Lopez was guilty as a party to the offense of trafficking in methamphetamine. OCGA § 16-2-20. As a result, we find that sufficient evidence supports Lopez's conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED SEPTEMBER 20, 2006.

*Cook & Connelly, Rex B. Abernathy*, for appellant.

---

[2] Furthermore, since Gonzalez was a co-conspirator, to the extent she made statements directly to Hines in English to further the conspiracy, Hines could testify regarding those statements under the co-conspirator exception to the hearsay rule. OCGA § 24-3-5; *Shelton v. State*, 279 Ga. 161, 163 (611 SE2d 11) (2005).

*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.