IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,339

STATE OF KANSAS,
*Appellee*,

v.

GELDY GUTIERREZ-FUENTES,
*Appellant*.

SYLLABUS BY THE COURT

1.

The general rule is that an issue not asserted before the trial court cannot be raised for the first time on appeal, though there are three recognized exceptions if, in its discretion, the appellate court believes the exception is justified under the facts of a particular case. One of these exceptions is when consideration of the theory is necessary to prevent the denial of fundamental rights. The right to a speedy trial is a fundamental right.

2.

Before invoking one of the limited exceptions, an appellate court must also determine whether the unpreserved issue is amenable to resolution on appeal. Even if a discretionary exception would support a decision to review a new claim, an appellate court has no obligation to do so.

1

3.

Aggravated burglary under K.S.A. 2020 Supp. 21-5807(b)(1) prohibits a person from entering, without authority, any dwelling in which there is a human being, with the intent to commit a felony, theft, or sexually motivated crime therein.

4.

Regarding authority to enter in an aggravated burglary prosecution, a close question may arise when the State does not present direct evidence about the defendant's and the victim's property interests in the residence where an aggravated burglary occurs. But circumstantial evidence can sufficiently support a finding that someone lacks authority to enter a residence.

5.

The hearsay exception in K.S.A. 2020 Supp. 60-460(a) allows admission of a statement previously made by a person who is present at the hearing and available for cross-examination.

6.

When an out-of-court interpreter is utilized, there is more than one statement for separate consideration under K.S.A. 2020 Supp. 60-460(a): first, the out-of-court foreign language statement, in that foreign language; and second, the out-of-court English language interpretation of the out-of-court foreign language statement. Because language is complex, a one-to-one correspondence between words or concepts in different languages is not always possible. Each statement, as uttered, must be separately considered for admissibility. The English interpretation does not serve as a conduit for admissibility of the foreign language statement.

Review of the judgment of the Court of Appeals in 59 Kan. App. 2d 70, 477 P.3d 1041 (2020). Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed April 29, 2022. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Geldy Gutierrez-Fuentes petitioned this court for review of three issues after the Court of Appeals affirmed his convictions for aggravated battery, aggravated burglary, and criminal threat. He argues (1) that his constitutional right to a speedy trial was violated, (2) that there was insufficient evidence to support his aggravated burglary conviction, and (3) that the district court erred by admitting out-of-court statements of an interpreter over defense hearsay objections. We affirm his convictions.

FACTS AND PROCEDURAL HISTORY

Gutierrez-Fuentes moved in with the victim, D.S., in late June 2016. After an argument in early October 2016 which resulted in Gutierrez-Fuentes grabbing D.S. by the throat and shoving her, D.S. told Gutierrez-Fuentes she did not want to be with him anymore and he needed to move out of the apartment. In compliance, Gutierrez-Fuentes

gathered some of his belongings, but when D.S. asked him to return the key to the apartment, he claimed he had lost it.

A few days after the split, D.S. was in the apartment behind a door locked with a deadbolt. The deadbolt could not be unlocked from the outside. Because Gutierrez-Fuentes had not returned the key, D.S. took extra precautions to secure her apartment and placed a chair behind the door. That day, Gutierrez-Fuentes returned to the apartment, knocked on the window, and asked D.S. to talk with him. She refused and did not give him permission to enter the apartment. In response, Gutierrez-Fuentes broke through the front door, went into the apartment, grabbed D.S., and started hitting her. Gutierrez-Fuentes told D.S. that if she was not going to be with him, he would kill her. D.S. blacked out. When she regained consciousness, she found help in the apartment upstairs, where one of her neighbors called 911.

Officer Dane Myers responded to the assault call. He found D.S. covered in blood and being consoled by a neighbor. He was not able to speak directly with D.S. at that time because of a language barrier. Officer Myers concluded the apartment door had been forced open, because wood chips were lying on the ground and the deadbolt was still in a locked position.

An ambulance took D.S. to the hospital, where a staff interpreter facilitated a conversation between D.S. and Officer Myers. At trial, Officer Myers gave testimony outlining this conversation with D.S.

D.S. was examined by forensic nurse Tracy Hess. Through the services of a staff interpreter, D.S. gave information to Hess. At trial, Hess gave testimony outlining this conversation with D.S.

Officer Rick Peña, who speaks both English and Spanish and therefore needed no interpreter, communicated directly with D.S. at the hospital and testified at trial about this conversation with D.S. The information Peña provided was consistent with the trial testimony given by D.S., Myers, and Hess.

Gutierrez-Fuentes, like D.S., does not speak English. He tried to turn himself in at the police station on October 5, 2016—the same day as the attack—but he was turned away. Charges were filed against him on October 31, 2016. Gutierrez-Fuentes was arrested on February 3, 2017, and tried on August 20, 2018.

The jury convicted Gutierrez-Fuentes on two separate counts of aggravated battery, one count of aggravated burglary, and one count of criminal threat. He was sentenced to a controlling 82 months in prison. He timely appealed.

Before the Court of Appeals panel, Gutierrez-Fuentes argued that his constitutional right to a speedy trial had been violated, there was insufficient evidence for his aggravated burglary conviction, the district court had allowed inadmissible hearsay evidence, and the district court erred when it instructed the jury on the elements of aggravated battery. The panel affirmed the district court, and Gutierrez-Fuentes seeks review of only the first three issues.

ANALYSIS

CONSTITUTIONAL SPEEDY TRIAL

Gutierrez-Fuentes first argues that his constitutional right to a speedy trial was violated because he was held in jail for 18 months before being brought to trial. He argues that the panel's analysis of the issue was deficient and that a full review and application of the constitutional speedy trial test would show his rights have been violated and his convictions need to be reversed.

*Preservation*

A defendant has both a statutory and constitutional right to a speedy trial. While clearly related, they are two separate rights with different tests and different burdens. See K.S.A. 2020 Supp. 22-3402 (setting forth the number of days after arraignment by which trial must begin to avoid dismissal of charges); *State v. Owens*, 310 Kan. 865, 869, 451 P.3d 467 (2019) (outlining the constitutional balancing test of the *Barker* factors adopted by this court). In this appeal, Gutierrez-Fuentes asserts that he made a timely objection—before his case was concluded in the district court—that his *constitutional* right to a speedy trial was violated, and thus he preserved this issue for appellate review. Accordingly, our first task is to determine whether Gutierrez-Fuentes actually preserved a claim that his constitutional right to speedy trial was violated.

The answer is not easy to ascertain. The record shows that neither Gutierrez-Fuentes nor any of his attorneys specifically objected to the court that his constitutional right to a speedy trial had been violated. Nor was a motion to dismiss filed on the basis

6

that the defendant's constitutional right to a speedy trial had been violated. Again, this highlights the difference between a defendant's statutory right and constitutional right to a speedy trial. The State has the burden of meeting the statutory speedy trial time requirement, and the defendant does not have to assert the right. *State v. Dreher*, 239 Kan. 259, 260, 717 P.2d 1053 (1986). However, in terms of a defendant's constitutional speedy trial right, neither the United States nor the Kansas Constitutions impose specific time requirements for bringing a criminal defendant to trial, which is why courts utilize the constitutional balancing test of the *Barker* factors. See *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). An effective review of the constitutional right often requires consideration in context of both trial delay and any prejudice to the defendant that may have resulted from that delay. Such an analysis of the constitutional requirements is more complex than simply counting days. A defendant benefits from ensuring the facts supporting the *Barker* factors are considered by the district court. Otherwise, those facts will not be included in the appellate court's contextual analysis, because appellate courts do not make findings of fact. In other words, the defendant also carries a burden to establish the *Barker* factors. *State v. Queen*, 313 Kan. 12, 16, 482 P.3d 1117 (2021) ("[Defendant] has not argued . . . that he could meet his burden to establish any of [the *Barker*] factors".). So, we look further. If evidence was presented by the defense from which the court made fact-findings relevant to the alleged violation of Gutierrez-Fuentes' constitutional speedy trial rights, the objection may be preserved even if the court did not find that the evidence sufficiently supported the objection or the motion.

Both the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights guarantee defendants the right to a speedy trial.

7

"The test to determine whether an accused has been afforded a speedy trial was set forth in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). *Barker* identified four factors to be considered when a claim of unconstitutional denial of a speedy trial is asserted:  the length of the delay, the reason for delay, the defendant's assertion of the right, and prejudice to the defendant. Kansas adopted the *Barker* four-point test in *State v. Otero*, 210 Kan. 530, 532-33, 502 P.2d 763 (1972). [Citation omitted.]" *State v. Jamison*, 248 Kan. 302, 306-07, 806 P.2d 972 (1991).

In weighing the *Barker* factors, the court must consider them together along with any other relevant circumstances, because none of the factors alone is sufficient to find a violation. However, the length of the delay could be determinative of the claim, because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004).

Turning to the record, we observe:

(1) Defendant did not articulate a constitutional speedy trial objection. While defendant filed a document early in the case that he was asserting his right to a speedy trial, he based that assertion on a *specific* number of days, which indicates a reference to the speedy trial statute rather than the constitutional right. Then, despite his early assertion, defendant later explicitly agreed to some continuances. After that, defendant and his counsel objected to any further delays. However, the proactive assertion that one objects to further delay is not the same as claiming that a right—either statutory or constitutional—has been violated.

(2) Defendant identifies no hearing during which evidence was presented on a claim that his constitutional right had been violated. Because no specific assertion was made of a constitutional violation, the district court, in turn, neither addressed the *Barker* factors nor made a fact determination as to whether those factors would weigh in favor of Gutierrez-Fuentes or the State. Because the defendant did not identify to the trial court the days that lapsed between Gutierrez-Fuentes' arrest and trial, the court did not make a finding as to whether that lapse was presumptively prejudicial. No evidence was presented concerning reasons for the delay. No evidence was presented on any prejudice to the defendant that may have resulted from the delay. Without a pretrial or posttrial motion to dismiss based on an alleged violation of his constitutional right to a speedy trial, the district court was not able to make the necessary factual findings and determination to resolve the issue. Our standard of review relies on the district court's factual findings, which we only review for substantial competent evidence. *Owens*, 310 Kan. at 868. Fact-finding is simply not the role of appellate courts. *State v. Nelson*, 291 Kan. 475, 488, 243 P.3d 343 (2010).

Considering all of this, we find that the record below does not support a claim that Gutierrez-Fuentes asserted a violation of his constitutional right to a speedy trial before the district court. Consequently, we find that this issue was not preserved. The panel below came to the same conclusion. Despite this finding, however, the panel continued, opting to consider the merits of Gutierrez-Fuentes' constitutional speedy trial issue under one of our limited exceptions which allows review of an unpreserved issue.

"Generally, the court does not address even constitutional issues for the first time on appeal. Within its discretion, however, the appellate court may do so if the party trying to raise a new issue shows a recognized exception to the general rule. Those exceptions are:

9

'(1) [T]he newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision.' [Citations omitted.]" *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020).

The right to a speedy trial is a fundamental right. *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). It is under this exception that the panel reviewed the issue. However, before invoking one of the limited exceptions, an appellate court must also determine whether the unpreserved issue is amenable to resolution on appeal. *State v. Allen*, 314 Kan. 280, 281, 497 P.3d 566 (2021). Even then, the decision to review an unpreserved claim under an exception is a prudential one; the court necessarily exercises discretion. Despite an exception supporting review of a new claim, an appellate court has no obligation to do so. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). Since Gutierrez-Fuentes did not assert this constitutional theory before the trial court and the necessary factual findings were never made, we hold the panel abused that discretion because Gutierrez-Fuentes' constitutional speedy trial claims require factual development out of our reach as an appellate court. We reverse the panel and decline to review Gutierrez-Fuentes' unpreserved constitutional speedy trial claim.

### SUFFICIENCY OF EVIDENCE ON AGGRAVATED BURGLARY

Next, Gutierrez-Fuentes argues there was insufficient evidence to support his aggravated burglary conviction because the State did not prove that he was legally unauthorized to be in the apartment.

*Preservation*

Sufficiency of the evidence issues are not constrained by a preservation requirement; "'[t]here is no requirement that a criminal defendant challenge the sufficiency of the evidence before the trial court to preserve it for appeal.'" *State v. Chavez*, 310 Kan. 421, 425, 447 P.3d 364 (2019).

*Standard of review*

When sufficiency of the evidence is challenged in criminal cases, the appellate court must review all the evidence in a light most favorable to the prosecution to determine if a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Frye*, 294 Kan. 364, 375, 277 P.3d 1091 (2012).

*Discussion*

The State charged Gutierrez-Fuentes with aggravated burglary under K.S.A. 2016 Supp. 21-5807(b)(1), which prohibits a person from entering, without authority, any dwelling in which there is a human being, with the intent to commit a felony, theft, or sexually motivated crime therein. The question turns on Gutierrez-Fuentes' legal authority to be in the apartment where the crime occurred.

11

Gutierrez-Fuentes primarily relies on *State v. Vasquez*, 287 Kan. 40, 194 P.3d 563 (2008), to support his argument. In *Vasquez*, a husband successfully argued that there was insufficient evidence to support his aggravated burglary charge when he entered his marital home. The *Vasquez* court acknowledged that the victim wanted nothing to do with the defendant: she asked him to stay away, she moved some of his belongings out of the house, she was divorcing him, and she may have been planning to file a petition for a protection from abuse order. But there was no actual evidence that he was legally unauthorized to enter the marital home. *Vasquez*, 287 Kan. at 59-60.

Gutierrez-Fuentes argues that his case is like *Vasquez*. Even though the apartment was not a marital home, he and D.S. had been living together for around four months before she told him she was ending the relationship and wanted him to leave. He points out that the record does not, with specificity, demonstrate what kind of legal interest D.S. had in the apartment, such as a rental agreement or some other ownership interest that would allow her legally to exclude him.

The panel distinguished this case from *Vasquez*. Instead, it chose to apply this court's more recent holding in *State v. Williams*, 308 Kan. 1439, 430 P.3d 448 (2018). In *Williams*, this court acknowledged that a "close question exists" when the State does not present direct evidence about the defendant's and the victim's property interests in the residence where an aggravated burglary occurs, but that circumstantial evidence can sufficiently support a finding that someone lacks authority to enter a residence. 308 Kan. at 1446.

The *Williams* court explained how there was circumstantial evidence that the victim had to give permission for the defendant to enter and that the defendant recognized her right to exclude him. The victim had taken back the defendant's key, which suggests she had the right to give and revoke permission. The defendant also called the victim and talked about dropping by, which suggests he did not think he had a right to demand access to the residence. The victim also refused to let him in when he knocked on the door, and the defendant eventually broke the door open to gain entry. 308 Kan. at 1446-47.

The facts in *Williams* align closely with those in the present case. Not only did D.S. tell Gutierrez-Fuentes to move out, but Gutierrez-Fuentes' actions in gathering his things and leaving indicate recognition that D.S. had the authority to make such a demand. This authority was reinforced when D.S. asked for Gutierrez-Fuentes' key, and he told her that he had lost the key rather than telling her the key was his and she had no right to ask for it. More, Gutierrez-Fuentes' act of knocking on the window and trying to persuade D.S. to allow him to enter was an implicit recognition that she had the authority to refuse his request. All of this is circumstantial evidence suggesting that D.S. did, in fact, have authority to revoke his access to the residence and that his forcible entry was without authority. Based on the evidence, and when viewed in a light most favorable to the State, a rational fact-finder could conclude beyond a reasonable doubt that Gutierrez-Fuentes entered the apartment without authority.

Gutierrez-Fuentes also asserts that he had authority to be in the apartment pursuant to K.S.A. 58-2501, which states: "Any person in the possession of real property with the assent of the owner is presumed to be a tenant at will, unless the contrary is shown . . . ." But this statute governs the relationship and responsibilities between landlords and

13

tenants; a relationship we cannot ascertain based on the lack of evidence in the record. Moreover, the same facts that constitute circumstantial evidence showing his absence of authority to be present in the apartment for purposes of the above discussion also provide circumstantial evidence to rebut the presumption he was ever a tenant at will. The actions of D.S. and Gutierrez-Fuentes indicate he understood he was a guest of D.S. and living there only with her permission and not because he was a tenant or co-tenant. Gutierrez-Fuentes cites no additional authority to support his position on this point. His argument fails.

## INTERPRETER STATEMENTS AS HEARSAY

In his last issue for review, Gutierrez-Fuentes argues that the district court erroneously admitted testimony given by Officer Myers and forensic nurse Hess about statements D.S. made to them through one or more unidentified interpreters while they were at the hospital. In addressing this issue of first impression, the panel interpreted the relevant hearsay statute to determine that there is a "language conduit" between the interpreter and D.S. so that statements of D.S. to Myers and Hess through the interpreter should be attributed as D.S.'s direct statements without an additional layer of hearsay. Even if this is incorrect and the district court erroneously allowed inadmissible hearsay, the panel determined that any error was harmless.

*Preservation*

Gutierrez-Fuentes objected to the testimony of Myers and Hess about these statements on hearsay grounds and obtained a continuing objection. By doing so, he

14

preserved this issue for appellate review. See *State v. Mattox*, 305 Kan. 1015, 1035, 390 P.3d 514 (2017).

*Standard of review*

This court reviews a trial court's determination of hearsay admissibility for an abuse of discretion. Discretion may be abused if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Hillard*, 313 Kan. 830, 838, 491 P.3d 1223 (2021). To the extent this court must interpret K.S.A. 2020 Supp. 60-460, its review is unlimited. *State v. Davey*, 306 Kan. 814, 820, 397 P.3d 1190 (2017).

*Discussion*

K.S.A. 2020 Supp. 60-460 states that:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible . . . ."

Given the arguments before us, we limit our analysis to a single exception to the hearsay rule, K.S.A. 2020 Supp. 60-460(a):

"(a) *Previous statements of persons present*. A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."

15

Gutierrez-Fuentes' specific objections are over the testimony of both Myers and Hess about their conversations with D.S. at the hospital, as facilitated by an interpreter supplied by the hospital. He argues that it should be the *interpreter* testifying about the statements made by D.S. rather than the officer or nurse who could not understand D.S.'s statements directly.

Gutierrez-Fuentes objects to testimony about D.S.'s hospital statements on the grounds of hearsay. He claims that the interpretation given by the hospital interpreter provides an additional level of hearsay. Without the interpreter's testimony at trial, and without an exception to the hearsay rule, the statements made by D.S. in Spanish to the hospital interpreter cannot be admitted into evidence, even if D.S. is in court during trial to testify about them.

Recognizing the hearsay exception in K.S.A. 2020 Supp. 60-460(a), which allows admission of a statement previously made by a person who is present at the hearing and available for cross-examination, the district court overruled the hearsay objections and stated that Gutierrez-Fuentes could cross-examine D.S. regarding her hospital statements and the accuracy of those statements as conveyed by Myers and Hess. We note here that while the concurrence understands the district court's comments about D.S. being available for cross-examination as a conclusion relating to both levels of hearsay, it does not find any endorsement from the State for the exception found in K.S.A. 2020 Supp. 60-460(a), thus it would not discuss it. We disagree because at trial the State argued it was following the rules of hearsay "because [D.S] will be present to be cross-examined about these statements." We acknowledge that this is not an artfully-made argument and it does not precisely reference K.S.A. 2020 Supp. 60-460(a). But we are inclined to find it was enough to preserve the argument today and allow us to address it now. It is clear

16

K.S.A. 2020 Supp. 60-460(a) was both the hearsay exception the State was relying on in its contention it was "following the rules of hearsay" and the hearsay exception the district court relied on at trial.

Ultimately, the panel sided with the district court and determined that the hospital statements were D.S.'s statements, despite the use of the interpreter; they were not the statements of the interpreter. Therefore, there was no extra layer of hearsay, they fall under the existing hearsay exception, and the statements were admissible. Gutierrez-Fuentes argues that the panel amended the statute and added a *new* exception for "language conduit" witnesses, the creation of which should fall only to the Legislature.

Because Kansas courts have not previously addressed this issue, both parties turn to outside jurisdictions to support their arguments.

Gutierrez-Fuentes relies on *State v. Morales*, 173 Wash. 2d 560, 573-74, 269 P.3d 263 (2012), where the Washington Supreme Court decided that the hearsay rule applied at least in certain situations involving an interpreter. In that case, the *Morales* court affirmed that the State had failed to prove the defendant had been read his rights; without the testimony of the interpreter, the State—through the testimony of an officer—could only show that the officer had asked the interpreter to read the required warning. He could not say that the interpreter did so. 173 Wash. at 573-74.

The State cites authority from the Georgia Court of Appeals which describes a "language conduit," stating that "[u]nder the so-called 'language conduit' rule, '[a]bsent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a[n interpreter] as a conduit for their communication, the

17

statements of the [interpreter] should be regarded as the statements of the persons themselves without creating an additional layer of hearsay.'" *Lopez v. State*, 281 Ga. App. 623, 625, 636 S.E.2d 770 (2006).

The *Lopez* rationale fits within "[t]he basic premise of the language conduit theory . . . that an interpreter is a neutral party whose translation does not add or detract meaning from the speaker's words. The interpreter can be thought of 'as a machine into which one language enters and another language exits.'" Comment, *Invisible Touch: Analyzing the Language Conduit Theory Through the Lens of Translation and Interpreting Principles*, 88 UMKC L. Rev. 771, 777 (2020). In that sense, the interpreter is just a tool used to facilitate communication. Absent a showing of dysfunction, it is reliable.

The panel explicitly adopted the language conduit rule, holding that except in unusual circumstances, an interpreter is "'no more than a language conduit and therefor [the] translation' is viewed as the declarant's own." 59 Kan. App. 2d at 84 (citing *United States v. Cordero*, 18 F.3d 1248, 1253 [5th Cir. 1994]. It applied various factors to the present case to determine that the record contained no evidence—or argument—of a motive by the interpreter to mislead Myers or Hess, and the statements interpreted were consistent with the testimony provided at trial. Therefore, the panel attributed the statements directly to D.S. without the additional layer of hearsay.

To assist in our analysis of the issue, it is helpful to consider the events as they occurred at the hospital, focusing on the D.S./Myers exchange, though the D.S./Hess exchange would have been essentially the same. Before any discussion began, an injured D.S., presumably knowing only Spanish, said nothing. At the same time, Myers,

presumably knowing only English, said nothing. Someone summoned an interpreter. That person arrived and spoke to Myers in English and spoke to D.S. in Spanish.

Myers asked a question in English and listened to the hospital interpreter speak Spanish to D.S. Without knowing Spanish, Myers had to assume the interpreter was conveying a reasonable facsimile of what he had just said in English. Myers then listened to D.S. reply in Spanish. Myers then listened in English to what the interpreter told him D.S. had just said. Meanwhile, D.S. did not understand what the interpreter and Myers were saying in English. And so on. The interpreter may have been completely accurate. However, neither Myers nor D.S. knew enough to correct or applaud the interpreter's efforts.

We do not know whether Myers' assumption about the accuracy of the interpretation at the hospital was well-placed, and at trial Gutierrez-Fuentes had no way of testing its accuracy or reliability because the interpreter did not testify. The State asserts that the interpreter is just a tool, a conduit, unless there is some evidence of taint, such as a conflict of interest or insufficient understanding of the language. Our record is silent on those matters.

To demonstrate why the reliability of the hospital interpreter's separate statements may be important, one must have some understanding of how language works. Consider the "telephone game." Three or more players form a circle. The game begins with one person whispering a detailed and specific message to the next person in the circle. The second person then whispers precisely the same message to the third person—and so on until you get to the last person, who announces the message out loud. The game is fun and interesting because the first person is often surprised by the message as relayed by

19

the last person. Almost always, the message has changed—sometimes slightly, sometimes dramatically—despite each player's best efforts to keep it the same. It is a game which reminds us that language is a complicated enterprise and communication is rarely perfect. Yet in the game, everyone is speaking the *same* language.

The State argues that the "conduit argument" is strengthened by the fact that both D.S. and Myers are testifying, so they can testify at trial to what they said in the hospital. But this begs the question. Memories fade, sometimes people are motivated to exaggerate, and it is possible the memories of *both* D.S. and Myers have adopted the message from the *interpreter* and not from each other. After all, neither of them knew what the other said in the hospital. They simply *trusted* that the interpreter was telling the truth and communicating the message accurately—just as in the telephone game, with the added layer of complication provided by two languages. Notably, the complexity of communication is only complicated further by the judgment decisions every interpreter must make in changing the message from one language to another and then back again, even in good faith. "Languages have unique nuances, and mastering their ebb and flow is an art form that takes time, exposure, and practice. The translator or interpreter thus 'recodes and transmits a message received from another source.' Because the message is recoded, not simply each word as a unit, end results may differ." 88 UMKC L. Rev. at 773.

We are not persuaded by the conduit theory. Instead, we identify two persons making statements when an interpreter is utilized: the witness, who made out-of-court foreign language statements; and the language interpreter, who made out-of-court foreign and English language statements. See *United States v. Charles*, 722 F.3d 1319, 1324 (11th Cir. 2013) (finding two sets of statements were made by two different declarants

20

when an out-of-court interpreter was used). The inherent differences in languages mean that interpreters do not always convey a "one-to-one correspondence between words or concepts in different languages," the interpreter is a "declarant" of her out-of-court statements, and the defendant must have an opportunity to confront such a declarant about those statements if they are submitted for the truth of what was said. 722 F.3d at 1324-25. This is true even with an ethical, experienced, and well-intended interpreter.

The State concedes that D.S.'s out-of-court statements were hearsay. Those hearsay statements, made in Spanish, would have been admissible at trial because D.S. was present and subject to cross-examination. K.S.A. 2020 Supp. 60-460(a). Likewise, the truth of the interpreter's out-of-court statements is important. Those statements, as uttered, must be separately considered for admissibility. The English interpretation does not serve as a "conduit" for admissibility of the foreign language statement.

Because no valid exception to their inadmissibility was asserted, the interpreter's statements under these facts were inadmissible hearsay. Gutierrez-Fuentes was not required to trust the hospital interpreter's understanding of the source and target languages, the interpreter's motives, or the interpreter's reliability. His hearsay objection should have been sustained.

*Harmlessness*

Even though the district court improperly admitted hearsay evidence, the inquiry does not end. The error might be harmless. The erroneous admission is harmless if it does not implicate a defendant's constitutional rights and there is no reasonable probability the error affected the trial's outcome considering the entire record. *State v. Chapman*, 306

21

Kan. 266, 276, 392 P.3d 1285 (2017). Gutierrez-Fuentes has not argued that his constitutional rights have been implicated by the admissions.

The only argument made by Gutierrez-Fuentes about how this evidentiary error affected the trial's outcome is that the panel failed to appreciate the "persuasive content of statements purported to be made closer in time to the alleged crime." It is true that a jury might find more reliable what D.S. said at the hospital than what she said at trial, even if only because memory fades over time.

Considering the entire record, however, there is no reasonable probability this evidentiary error affected the trial's outcome. As the panel correctly notes, the challenged testimony was also admitted through unchallenged witnesses. Officer Peña spoke directly with D.S. at the hospital, without the use of an interpreter, and his testimony about her statements at the hospital is consistent with the testimony of Myers and Hess. Further, while the jury may have found what D.S. said at the hospital more reliable than what she said during trial—as argued by the defense—its relative value is offset by her lengthy testimony at trial about all the same facts relayed to the jury through Peña, Myers, and Hess.

We hold that the erroneous ruling on this hearsay objection was harmless.

The judgment of the Court of Appeals is affirmed in part and reversed in part. The judgment of the district court is affirmed.

LUCKERT, C.J., concurring:  I write separately on one issue:  Whether the district court judge erred in categorically admitting all testimony from Officer Dane Myers and forensic nurse Tracy Hess about statements a language interpreter made to them concerning things D.S. said while at the hospital for treatment. I join the majority on all other aspects of today's decision.

On the language interpreter issue, I agree with the majority's conclusions that (1) the district court erred in admitting the interpreter's statements and the Court of Appeals erred in affirming the admission of this testimony and (2) the erroneous admission of the testimony was harmless error. But my reasons for finding error differ from those of my colleagues.

I would hold that the State failed to preserve the argument it makes on appeal. It contends the statements of the interpreter are not hearsay under the language conduit theory applied by courts in some other states and adopted by the Court of Appeals panel in this case. See *State v. Gutierrez-Fuentes*, 59 Kan. App. 2d 70, 84, 477 P.3d 1041 (2020). The State asks us to adopt the theory as explained in *Lopez v. State*, 281 Ga. App. 623, 625, 636 S.E.2d 770 (2006). That decision's holding requires factual determinations about the interpreter's motive and about other issues that might impact the accuracy of the interpretation. But the State failed to establish a factual foundation to make those determinations. Plus, it failed in its appellate briefing to explain how the theory could apply given Kansas' hearsay statute, K.S.A. 2020 Supp. 60-460. Given those failures, the

State has not preserved its arguments about the language conduit theory and appellate courts should not consider the State's theory for the first time on appeal.

A brief recap of the evolution of the parties' arguments explains why I reach these conclusions. At trial, Geldy Gutierrez-Fuentes' attorney objected on hearsay grounds when Officer Myers began to testify about the statements D.S. made through an interpreter. Gutierrez-Fuentes' attorney then argued the language interpreter should be testifying because the officer was "testifying to what another person is telling him about what a third person is saying. It's pure hearsay." He reiterates that argument on appeal.

Gutierrez-Fuentes' position finds broad support in cases decided before codes of evidence were adopted for use in federal and most state courts, including those in Kansas. Under those cases, "'[a] person conversing with a third person through an interpreter is not qualified to testify to the other person's statements, because he knows them only through the hearsay of the interpreter. Ordinarily, therefore, the third person's words cannot be proved by anyone except the interpreter himself.'" *Saavedra v. State*, 297 S.W.3d 342, 345 (Tex. Crim. App. 2009) (quoting 2 Wigmore on Evidence § 812[3] [2d ed. 1923]).

Kansas' statutory definition of hearsay follows this common law view. Under Kansas' code of evidence and its definition of hearsay, out-of-court statements made for the truth of the matter asserted are hearsay that are excluded from evidence unless one of the statutory hearsay exceptions applies. These exceptions are set out in 31 provisions. K.S.A. 2020 Supp. 60-460. At trial, everyone tacitly accepted that D.S. and the interpreter uttered the objected-to statements outside the courtroom. And the State made no argument that it offered either D.S.'s or the interpreter's statements for a reason other

24

than the truth of the matter asserted. The district court judge then determined the evidence was hearsay.

No one at trial explicitly discussed the implications of K.S.A. 60-463, which addresses admissibility in the context of multiple hearsay—often called hearsay within hearsay. Here, multiple hearsay is at issue because the State asked the officer (and, later in the trial, the forensic nurse) to testify to two layers of statements: (1) Those made by D.S. to the interpreter and (2) those made by the interpreter to the officer and nurse.

K.S.A. 60-463 allows a judge to admit multiple hearsay only if a hearsay exception applies to each layer of statements. *State v. Brown*, 285 Kan. 261, 279, 173 P.3d 612 (2007), *abrogated on other grounds by State v. Williams*, 306 Kan. 175, 392 P.3d 1267 (2017). Thus, to analyze the validity of Gutierrez-Fuentes' objection, the district court needed to determine if each layer of the objected-to statements (1) constituted hearsay and, (2) if so, if an exception applies.

The State argued that D.S. "can corroborate the correct translation, that's why it's the State's position that it goes to weight and credibility and not admissibility under hearsay because she will be present to corroborate the statements that were translated." The State also tried to argue why the statements were reliable based on factors like who employed the interpreter. Gutierrez-Fuentes' attorney objected, saying no evidence supported those contentions.

In ruling on the arguments, the district court judge explicitly found the interpreter's statements were hearsay and thus rejected the State's non-hearsay argument. But the judge implicitly accepted the State's contention that he could admit the statements

25

because D.S. could corroborate the statements; the judge noted that D.S. would testify and could be cross-examined about the accuracy of the interpretation. Yet no one argued what hearsay exception this fell under. And Kansas has no general catchall exceptions for reliability of hearsay or for hearsay that others can corroborate. See K.S.A. 2020 Supp. 60-460(a)-(ee).

On appeal, the State makes a different argument. For the first time, it raises the language conduit theory to argue the language interpreter's statements are not hearsay. As I have discussed, that assertion ignores the statutory hearsay definition in K.S.A. 2020 Supp. 60-460, which applies to all out-of-court statements offered for the truth of the matter asserted. The State does not explain why the statement does not meet this definition. I, like my colleagues in the majority, agree with the district court judge's conclusion that the interpreter's statements were hearsay. The interpreter made declarations about what D.S. said and the State offered the interpreter's declarations for the truth of the matter asserted—that is, that D.S. made those statements.

Without discussion of why the interpreter's statements do not meet the definition of hearsay in K.S.A. 2020 Supp. 60-460, the State cites *Lopez v. State*, 281 Ga. App. 623, 625, 636 S.E.2d 770 (2006), to support its argument. In *Lopez*, the Georgia Court of Appeals held that "'[a]bsent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay.'" 281 Ga. App. at 625 (quoting *Cassidy v. State*, 149 S.W.3d 712, 715 [Tex. App. 2004] *abrogated on other grounds by Wall v. State*, 184 S.W.3d 730 [Tex. Crim. App. 2006]).

This brings us to the procedural point that reveals the State's failure to preserve its argument about the language conduit theory, which it raises for the first time on appeal. Again, I reach my conclusion the State failed to preserve its argument for two reasons.

The first reason arises because the *Lopez* holding requires the presence of certain factual predicates before the language conduit theory can be applied. Those predicates include establishing that the interpreter had no motive to mislead or distort and that nothing else suggests inaccuracy in the interpretation. 281 Ga. App. at 625. Finding motive (or the lack thereof) and judging circumstances that might impact the accuracy of an interpretation are inherently factual determinations. The State began to argue some indicia of reliability. But when Gutierrez-Fuentes' attorney accurately argued no evidence supported the contentions, the State did not make another effort to lay a foundation. Nor did the State ask the district court judge to make any findings, and the judge made none.

When these factual predicates have not been established or found at the trial court level, appellate courts in other jurisdictions have refused to apply the theory for the first time on appeal. These courts recognize that the proponent of the theory, which in this case was the State, has the obligation to establish at trial the foundation for applying the language conduit theory and to request findings sufficient for appellate review. See, e.g., *State v. Rodriguez-Castillo*, 345 Or. 39, 50-51, 188 P.3d 268 (2008) (noting [1] State did not argue language conduit theory before the trial court, [2] neither defendant nor State presented any evidence on factors, and [3] trial court had no chance to rule on factors, which meant appellate court was "not in a position to rule as a matter of law" on theory's applicability under that state's residual hearsay exception); *Saavedra*, 297 S.W.3d at 348-49 (discussing burden proponent of evidence bears in establishing reliability of interpretation before language conduit theory applies). These holdings align with Kansas

law, which requires proponents of hearsay evidence to establish the foundational basis for applying a hearsay exception. See *State v. Johnson-Howell*, 255 Kan. 928, 935, 881 P.2d 1288 (1994), *abrogated on other grounds by State v. Jefferson*, 287 Kan. 28, 194 P.3d 557 (2008).

Unlike these courts and Kansas' general rule, the Court of Appeals panel scoured the record to see whether it revealed a motive for the interpreter to mislead or distort or any other indication of the interpretation's inaccuracy. *Gutierrez-Fuentes*, 59 Kan. App. 2d at 84-85. But appellate courts are not finders of fact and should not consider an issue raised for the first time on appeal if doing so requires making factual findings. When an appellate court engages in fact-finding, it abuses its discretion. See generally *State v. Allen*, 314 Kan. 280, 284, 497 P.3d 566 (2021) ("An appellate court abuses its discretion to take up a newly raised issue if deciding its merits would require the court to make factual findings such as credibility determinations, resolving evidentiary conflicts, and reweighing evidence. These are typically tasks an appellate court may not perform when the factual issues could have been fully litigated before the appeal.").

Here, the State failed to preserve the issue it asserts on appeal and has thus established no basis for introducing the interpreter's statements. Given that, the Court of Appeals should not have considered application of the language conduit theory nor should this court.

The second reason the appellate courts should not address the language conduit theory is that the State in its appellate brief made no effort to discuss the doctrinal underpinning of the *Lopez* holding. Yet the statutory structure of the hearsay rule on

28

which its holding is based differs in an important respect—the definition of hearsay—from the definition in Kansas.

To explain, we must look beyond *Lopez* itself because it fails to explain its rationale. Instead, it merely quotes and adopts the holding of the Texas Court of Criminal Appeals in *Cassidy*, 149 S.W.3d at 715. *Cassidy*, also cited by the State, explains its holding rests on "'the theory that the interpreter serves as an agent of, or a language conduit for, the declarant.'" 149 S.W.3d at 715. Another Texas Court of Criminal Appeals decision—*Saavedra*, 297 S.W.3d at 344-49—provides a fuller explanation of the rationale and discusses the roots of the language conduit theory in common law and the way the theory fits with the Federal Rules of Evidence and Texas' evidence rules, which follow the federal rules.

As the Texas court explained, the language conduit theory evolved from a common-law hearsay rule that recognized interpreters often function as an agent of the declarant. *Saavedra*, 297 S.W.3d at 345 (quoting 2 Wigmore on Evidence § 812[4]). With the advent of the Federal Rules of Evidence, federal courts recognized the common law agent-interpreter theory could still be applied under Federal Rule of Evidence 801(d)(2)(C) and (D). *Saavedra*, 297 S.W.3d at 347. The Texas court cited a federal case decided soon after the rules were adopted—*United States v. Da Silva*, 725 F.2d 828 (2d Cir. 1983). The *Da Silva* court held that "'[p]rovided the interpreter has a sufficient capacity, and there is no motive to misrepresent, the interpreter is treated as the agent of the party and the statement is admitted as an admission unless circumstances are present which would negate the presumption of agency.'" 725 F.2d at 831-32 (quoting 4 J. Weinstein & M. Berger, Evidence ¶ 801(d)(2)(C)[01], at 801-158 n. 34 [1981], and citing 6 J. Wigmore, Evidence § 1810[2], at 376 [Chadbourn rev. ed. 1976]).

29

*Lopez* and the State also cite, but do not discuss or quote *People v. Gutierrez*, 916 P.2d 598 (Colo. Ct. App. 1995). It, too, applies the language conduit theory in the context of an agency exception to the hearsay rule. The Colorado court cited Colorado Rule of Evidence 801(d)(2)(E) (admission of party; coconspirator), which it noted is "identical to Fed. R. Evidence 801(d)(2)(E)." Citing federal caselaw, the court noted "a growing majority of jurisdictions now allows admission of translated testimony in appropriate circumstances assuring its reliability, on the theory that the interpreter serves as an agent of, or a language conduit for, the declarant." 916 P.2d at 600.

Understanding that this interpreter-agency theory creates the rationale for the cases cited by the State leads to my conclusion that the State failed to adequately explain how the theory can be applied under Kansas law. That is because Federal Rule of Evidence 801 and state rule patterned on it define hearsay in a manner different from the definition in the Kansas Code of Evidence. The federal rule excludes certain statements from the definition of hearsay even if made outside court and offered for the truth of the matter asserted. Fed. R. Evid. 801(d) ("A statement that meets the following conditions is not hearsay."). These include statements defined in Rule 801(d)(2)(C), (D), and (E), which relate to statements made by a party's agent, one acting under a party's authorization, or one conspiring with a party—the circumstances federal courts have applied to interpreters unless facts suggest otherwise. *Da Silva*, 725 F.2d at 831. State courts with codes of evidence modeled after the federal rules, including Texas, have sometimes used the same analysis. See *Saavedra*, 297 S.W.3d at 347-49 (citing Tex. R. Evid. 801[e]). And it is this Texas analysis that supports *Lopez.* See *Lopez*, 281 Ga. App. at 625 (quoting *Cassidy*, 149 S.W.3d at 715); 149 S.W.3d at 715 (citing Tex. R. Evid. 801[e] and citing *Gutierrez*, 916 P.2d 598 [in turn citing Colo. R. Evid. 801(d)(2)(E)]).

30

The Kansas Code of Evidence does not exclude out-of-court statements offered for the truth of the matter asserted from the definition of hearsay regardless of the trustworthiness of the circumstances in which the statements are made. See K.S.A. 2020 Supp. 60-460. The theoretical basis in *Cassidy* and *Lopez* for saying the interpreted statement is not hearsay thus does not exist in Kansas law. Instead, K.S.A. 2020 Supp. 60-460 excludes hearsay unless an exception applies. The State consequently needed to propose a hearsay exception justifying the admission of the interpreter's statements into evidence. But it cites no exception in its appellate brief. It thus failed to meet its burden and failed to preserve the issue for appellate review. See *State v. Raskie*, 293 Kan. 906, 919, 269 P.3d 1268 (2012) (holding defendant failed to brief hearsay exceptions and inadequate briefing led to waiver of argument).

Even so, the majority chooses to discuss whether K.S.A. 2020 Supp. 60-460(a) applies. While I understand one could read the district court judge's comments about D.S. being available for cross-examination as a conclusion relating to both levels of hearsay, I do not read either the State's trial arguments or its appellate arguments as proffering that exception as a path to admission of the evidence. Rather, the State's arguments and the ruling relate to trustworthiness and credibility (which in Kansas is not alone a basis for admission of evidence) and to whether the interpreter's statements are hearsay (although the State never addresses the Kansas definition). Unlike the majority, I would not discuss an exception not cited by the State.

I also recognize that some courts have followed a different analytical path for applying the language conduit theory than the path followed in *Cassidy* and *Lopez* (see *Saavedra*, 297 S.W.3d at 347-49 [gathering cases]). But I would not analyze any other

31

path than the *Cassidy/Lopez* one without allowing the parties to brief the alternative. See *State v. Toothman*, 310 Kan. 542, 547, 448 P.3d 1039 (2019) ("'[W]hen "an appellate court raises a new issue sua sponte, counsel for all parties should be afforded a fair opportunity to brief the new issue and to present their positions to the appellate court before the issue is finally determined."'").

In sum, I would hold the district court erred in admitting the interpreter's statements because the State has yet to establish a hearsay exception allowing its admission. And I would hold the Court of Appeals abused its discretion in addressing the language conduit theory when the State had not laid the foundation for its application and had failed to adequately brief the issue. I thus agree with the majority that both the Court of Appeals and the district court judge erred, although I do not join the majority's rationale. And, like my colleagues in the majority, I would hold the district court's error was harmless.

BILES, J., joins the foregoing concurrence.